On Rehearing.
Nicholls, O. J.
Both parties applied for a rehearing in this case.
Plaintiff contends there is error in the judgment herein rendered.
1. In not allowing interest on closed accounts of plaintiff’s tutorship from the time the account was closed.
2. In placing the judgment of B. O. Smith behind the judgment of Ernest J. Smith; in not pro-rating the credits on said judgments arising from the sale of the succession property of Mrs. Alpha M. Smith, and in imputing the whole amount of Ernest J. Smith’s bid of $5800 on the real estate of said succession as a credit on his judgment exclusively, when in point of fact B. O. Smith’s judgment- was alive and entitled to share in the proceeds of said sale.
3. In not allowing Homer Smith and E. J. Smith to pro-rate the amounts paid by Homer Smith for his peace in the compromise between him and Ernest Smith as they did — that is, to each judgment pro rata, giving to E. J. Smith’s judgment its share of the credit, and to B. C. Smith’s judgment its share likewise.
Defendant urges, 1st. “That the judgment of plaintiff should be credited with the sum of $4500 instead of the credit of $3500 allowed by the court; the said $4500 being the sum actually received by plaintiff in the execution of his judgment against W. W. Johnson, on the ground that the defendant having the right to force the discussion of the property of Johnson, and having exercised that right, has also the right to force the plaintiff to apply the proceeds of the property to the payment of his judgment; the right of discussion necessarily carrying the right to force the application of the proceeds of the property discussed.”
2. “ That the court erred in not crediting the judgment of plaintiff with the sum of $5000, this being the amount received by plaintiff in a notarial act from H. H. Smith on account of his judgment and which plaintiff in a notarial act before George B. Sheppard declares to have been received on said judgment and specially credits the judgment in said act with said sum.”
3. “The judgment of plaintiff should be credited with the sum of *1469 $3750, the amount of plaintiff’s renunciation in the sale from his tutrix to H. H. Broad.”
We have carefully re-examined the record.
The plaintiff, Ernest Smith, and Beverly O. Smith, his brother, were, at the death of their father, minors. Their mother was ap - pointed and qualified as their tutrix. The abstract of inventory in the succession of the father was recorded as required by law on the 9th November, 1869, and reinscribed August 1, 1881.
On November 8, 1869, Beverly Smith obtained a judgment against his tutrix for the sum of $10,743, which was reduced on the day of its rendition, by a partial payment of $5996, to the sum of four thousand seven hundred and thirty eight dollars. The amount of the judgment was in liquidation of the rights of Beverly Smith against his mother as his tutrix, and it was secured at that time by the general mortgage on the tutor’s property. The failure in the judgment to recognize fhat fact did not destroy the actually existing mortgage. This judgment was inscribed on 15th July, 1873.
On the 20th December, 1872, Ernest J. Smith obtained a judgment against his tutrix for the sum of $10,734.85, and recognizing that payment of the same was secured by the minor’s mortgage.
This judgment was recorded August 1, 1873. and reinscribed August 1, 1881.
It was revived 28th February, 1881, and judgment of revival recorded the same day.
On the 11th September, 1871, Mrs. Alpha M. Smith and Mrs. Ellen Hine sold to H. H. Broad certain property for the price of thirty-seven hundred and fifty dollars. On the next day (12th September, 1871) Ernest Smith and Beverly Smith renounced their mortgage on the property so sold.
Mrs. Alpha Smith died September 1, 1879. At the sale of her succession property made on the 5th May, 1880, Ernest Smith purchased property to the amount of $5800, one-third cash and the balance represented by notes payable in one and two years, with 8 per cent, interest from date.
At that date more than ten years had elapsed from the date of the inscription of the abstract of inventory (Nomember 9, 1869) , and it had not at that time been reinscribed; but Beverly Smith’s judgment (which, as we have seen, did not refer to or recognize the minor’s mortgage) was, as such, alive, and its inscription on 15th July, 1873, had not perempted.
*1470 It appears that on the 27th May, 1869, Mrs. Alpha M. Smith had sold certain property to another son, Homer H. Smith, on which the mortgages in favor of Ernest and Beverly Smith rested.
The son, on the death of his mother, was appointed administrator of her succession, and in that capacity he had in his possession in 1881 the two notes representing the credit instalments of the purchaser made hy Ernest Smith at the succession sale. Having loaned money, or made advances to his brother, Beverly, to an amount of about $1400, the latter had transferred to him by way of collateral security the judgment which he had obtained, as we have said, against his mother and tutrix. Thus matters stood, when Ernest Smith threatening to proceed by way of an hypothecary action against Homer, as third possessor of the property which he had purchased from the tutrix, an act was passed (27th August, 1881) between the parties in which Homer Smith transferred to Ernest the Beverly Smith judgment which he held as collateral, with the obligation assumed on the part of Ernest to hold and sa ve him (Homer) and his property harmless against all claims which could be urged by Beverly.
Ernest Smith having thus become the holder of the two judgments, the act proceeds to recite that Ernest Smith, claiming a mortgage on the property byjvirtue of the two judgments, declared that “for and in consideration of the sum of $5000, this day to him paid by Homer H. Smith, receipt of which he hereby acknowledges, and which said sum of $5000 is hereby credited as payments on the above described judgments pro rata in the proportion that the respective amounts of said judgments bear to the said sum paid, that he did and does hereby forever abandon, relinquish and declare fully paid, satisfied and extinguished all claims, demands, mortgages, judgments, rights of action, hypothecary rights and all other rights of whatever nature which he may have and hold as the owner and possessor of the said above described judgments bearing upon the above described property, and guaranteeing (as we have above stated) the said Homer H. Smith against harm or eviction on the part of the heirs of Beverly Smith or his assigns from the collateral judgment herein transferred, and the said Homer Smith canceling and surrendering, and delivering the two certain promissory notes, each for the sum of $1988.33 dated, drawn and signed by Ernest J. Smith on the 5th May, 1880, and payable one in one year and the other in two years after date, *1471 to the order of H. EL Smith, administrator, and conditioned to bear 8 per cent, per annum from date until paid, and the payment thereof secured by a special mortgage and vendor’s privilege on the property purchased by said Ernest J. Smith, at the succession sale of the property belonging to the estate of Mrs. Alpha M. Smith, as fully described in the deed of said property from said administrator; the said Ernest J. Smith hereby grants a full and final receipt and discharge to said Homer H. Smith for all claims, demands and actions as the holder and owner of said described judgments which he may have against the said Homer H. Smith as administrator of the succession of Mrs. Alpha Smith, resulting from the sale of the property belonging to said succession made on the 5th May, 1880.”
Subsequently to this, Ernest Smith proceeded by an hypothecary action against one Johnson as third possessor of property, subject to his mortgage, and in that action certain property was seized, and on the 30th of August, 1884a sold to a third person for the price of forty-five hundred dollars, which the purchaser paid to the sheriff and the latter to the plaintiff.
The third possessor having taken a devolutive appeal in the premises, the matter was compromised by the plaintiff paying to Johnson $1000 of the purchase price, he actually receiving therefore from the action $3500.
On the 28th November, 1882, the present hypothecary action was instituted against the defendant as third possessor of property claimed to have belonged to Mrs. Alpha Smith during the tutorship, and to be affected by the general mortgage resulting from the tutorship of the plaintiff.
The property was sold by T. D. Hiñe and Mrs. Alpha Smith on August 22, 1862, to John Walker, by John Walker to G. G. Walker September 22, 1871, by G. G. Walker to Patrick Byrne, August 20, 1874, by Patrick Byrne to Miss Lewis (the defendant) March 22, 1880.
In ascertaining the rights of parties we take as the starting or initial date in our investigations the 27th day of August, 1881, that being the date of the act between the plaintiff, Ernest Smith, and his brother Homer, and in dealing with the judgments of Ernest and Beverly Smith against their mother and tutrix we shall not include interest upon either, as by the terms of neither judgment was interest decreed.
Where the plaintiff in an hypothecary action against a third pos *1472 sessor of mortgaged property declares as his instrument of attack upon a judgment which, by its terms, decrees no interest, the blow inflicted is gauged by and corresponds with the weapon used.
A judgment of the character mentioned does not carry with it, as such, interest against the third possessor. If interest could under any circumstances be claimed by the holder of such a judgment it would arise, not from the judgment itself proprio vigoi-e, but from extrinsic facts.
We are not called on to say whether plaintiff in an hypothecary action would have the right as against a third possessor who absolutely denies all liability, makes no tender and forces plaintiff into a protracted litigation, he himself remaining pending the litigation in possession of property bearing fruits, to claim interest on the judgment from judicial demand, not as resulting directly from the judgment but from the refusal of the third possessor to either surrender the property or pay the debt. It may be that under Articles 3453, 2553 of the Oivil Oode, plaintiff might be entitled to interest if under such circumstances he claimed interest.
Returning to a consideration of the situation of parties on the 27th day of August, 1881, it will be seen that on that day Ernest Smith owed as a purchaser at the sale of the property of his mother’s succession the cash portion of that purchase price, nineteen hundred and thirty-three dollars and thirty-three and a third cents, and the amount of his two notes, thirty-eight hundred and sixty-six dollars sixty-six and two-third cents, with interest on this last amount from the 5th May, 1880, to the 27th day of August, 1881. The whole indebtedness at that time, therefore, being six thousand two hundred and five dollars.
Now, at the date of the sale and on the 27th day of August, 1881, Ernest Smith was a judgment creditor to the amount of ten thousand seven hundred and thirty-four dollars, and Beverly Smith was a judgment creditor to the amount of four thousand seven hundred and thirty- eight dollars.
At that date more than ten years had elapsed since the inscription of the abstract of inventory in the matter of the succession of Simeon Smith, the father of the parties; but Beverly Smith had, as we have stated, obtained a judgment against his mother and tutrix, which he (had caused to be recorded on the 15th July, 1873, and if the inscription of that judgment had the effect of preserving the *1473 evidence of a general mortgage in favor of Beverly Smith on the property of his tutrix the mortgage had not perempted, but was in full force.
The judgment referred to was as follows:
“ In this matter it appearing to the satisfaction of the court that the tutrix had delivered to her ward, Beverly O. Smith, the full and final account of her tutorship on the 1st September, 1869, with the vouchers in support of said account, the receipt of which was duly acknowledged by said Beverly C. Smith, as per his receipt in the record, and no opposition having been filed to the homologation of said account, and the law and the evidence being in favor of said homologation, it is therefore ordered, adjudged and decreed that said account be homologated and approved in all its parts, and that the said Beverly O. Smith do have judgment against his said tutrix for the sum of ten thousand seven hundred and forty-five dollars, subject to such credits as may have been given by said ward to said tutrix before the rendition of the judgment.”
It will be noticed that the name of the tutrix is not given in the judgment. The judgment is silent as to any mortgage securing payment of the judgment, and there is nothing in it to show the date of the tutorship. So long as the inscription of the abstract of inventory was not perempted, the indefiniteness of this judgment may perhaps have been cured or supplemented by the recorded ab - stract, but when the effect of that registry ceased and the rights of parties quoad inscription had to rest exclusively on the recorded judgments, a very different condition of things arose. We are of the opinion that the recording of this judgment was not a legal compliance with the law of registry, and that • though the judgment may be alive, the mortgage securing it has ceased to exist. This being the case the whole of the price due on the 27th August, 1881, by Ernest Smith (six thousand two hundred and five dollars) resulting from his purchase on the 5th May, 1880, of his mother’s succession, was to be credited on his judgment and extinguished as to that extent. The balance due him on his judgment after the application of these proceeds was four thousand five hundred and twenty nine dollars.
On the 27th August, 1881, the act to which we have referred between Homer Smith and Ernest Smith was passed. In that act both parties recognized and declared a payment of five thousand dollars *1474 by Homer Smith to Ernest Smith, and as resulting therefrom the crediting pro rata of the amounts due that day on the two judgments of Ernest and Beverly. What were the amount of the two judgments at that time? Ernest’s judgment had been reduced to four thousand Jive hundred and twenty-nine dollars, whilst Beverly’s remained intact and unpaid at the sum of four thousand seven hundred and thirty-eight dollars. Waiving all objections which might be urged to the application of the five thousand dollars to the two judgments, and giving effect to the agreement between the parties, we have to distribute Jive thousand dollars between the two judgments according to the amount mentioned — in round numbers twenty-five hundred dollars would be credited on each judgment. Deducting that amount from Ernest Smith’s judgment, there would remain a balance due him of two thousand and twenty-nine dollars.
In the enforcement of plaintiff’s claim against Johnson, $3500 were actually realized and paid over to the plaintiff. This payment extinguished entirely plaintiff’s judgment.
Plaintiff very vigorously denies that he has recovered a cent of the $5000 mentioned in the Homer Smith act. It may be that no money passed between the parties, but both considered that Ernest Smith was, through the provisions of that act, benefited to the amount of $5000, and the plaintiff consented to regard the benefit received in the light of a payment to that amount.. He may have acted in error of law and unadvisedly, but we are bound to give effect to his contract.
In connection with the act of 27th August, 1881, the fact must not be overlooked that through it Ernest Smith became the holder with control thereof of the Beverly Smith judgment, a fact to which he evidently attached great importance. We can not undertake to say what would be the original rights and obligations of Homer, Beverly and Ernest Smith inter se should Beverly pay his indebtedness, reclaim his judgment and stand upon his rights. We have to deal with the rights of parties from the position in which they have themselves placed them at the present time.
For the reasons herein assigned it is ordered, adjudged and decreed that the judgment heretofore rendered herein be set aside, and it is now ordered, adjudged and decreed that there be judgment in favor of defendant against plaintiff rejecting his demand and dismissing his suit with costs in both courts.
Parlange, J., takes no part.